IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
(Milwaukee Division)

| | |
|---|---|
| JOHN DOE,<br><br>　Plaintiff,<br><br>v.<br><br>MARIAN UNIVERSITY,<br><br>　Defendant. | Civil Action No. 2:19-cv-00388-JPS |

### PLAINTIFF'S SUGGESTION OF MOOTNESS AND OPPOSITION TO DEFENDANT'S 12(b)(6) MOTION TO DISMISS PART OF PLAINTIFF'S COMPLAINT

Defendant Marian University's (the "University") motion to dismiss (Dkt. 11) is moot due to Plaintiff John Doe's ("Doe") filing an amended complaint. Doe properly and timely filed his amended complaint (Dkt. 17) on May 31, 2019, the deadline provided for in the Joint Rule 26(f) Report (Dkt. 7, ¶ 4) and per Rule 15(a). Fed. R. Civ. P. Rule 15(a) ("[a] party may amend its pleading once as matter of course…21 days after service of a motion under Rule 12(b)").

Per controlling law, "[w]hen an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008); *see also, Flannery v. Recording Indus. Assoc. of America*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004) (referencing *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1962) ( concluding "[i]t is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void."). As

1

such, a motion to dismiss the original complaint is mooted by the filing of an amended complaint. *Trading Techs. Int'l, Inc. v. BGC Partners, Inc.*, 2010 U.S. Dist. LEXIS 84138, at *3 (N.D. Ill., Aug. 17, 2010) (quoting *Johnson v. Fundex Games Ltd.*, 2010 U.S. Dist. LEXIS 23374, at *6 (N.D. Ind., March 10, 2010) ("[b]ecause the new complaint supersedes preceding complaints and all related motions, Defendant's Motion to Dismiss and Plaintiff's Partial Motion for Summary Judgment are moot and denied as such"); *see also, GMP Techs v. Zicam, LLC.*, 2009 U.S. Dist. LEXIS 115523, at *2, n.1 (N.D. Ill., Dec. 9, 2009) ("Defendants filed a motion to dismiss GMP's original complaint…GMP then filed it Amended Complaint…Defendant's motion to dismiss GMP's original complaint is therefore denied as moot").[1] Accordingly, Plaintiff requests that the Court deny the University's motion to dismiss as moot.

Doe met and conferred with the University regarding the mootness of the motion to dismiss on Monday June 3, 2019. The University does not agree that the motion is moot. Therefore, Doe substantively responds to the University's motion to dismiss as follows:

Should the Court not deny the motion as moot, it still fails. The University moves to dismiss three of Doe's five causes of action – violation of Title IX; breach of implied contract; and his claim for declaratory relief. The University's motion fails because John Doe sets forth sufficient factual allegations that demonstrate: (1) gender bias by the University; (2) the University breached the terms of the contract;

---

[1] Pursuant to Civil L.R. 7(j)(2), a copy of these decisions have been filed as Exhibit 1 to this brief in opposition.

and (3) there is a justiciable controversy and threat of ongoing and future harm. Accordingly, Defendant's motion for partial dismissal should not be granted.

## FACTUAL BACKGROUND

Plaintiff was a University student from fall of 2016 until he was suspended in December 2018. (Dkt. 1, ¶ 2). Doe joined the University's Reserve Officer's Training Corps ("ROTC") in the fall of 2017. (Dkt. 1, ¶ 2). Doe's association with ROTC provided him with a substantial scholarship that was critical to funding his college education. *Id.*

In the fall semester of 2018, Jane Roe ("Roe") falsely accused Doe of sexual misconduct that she alleged occurred in September 2017. (Dkt. 1, ¶ 9). Doe admits that he and Roe had consensual sex during the fall semester of 2017 after a party in which they were both drinking. (Dkt. 1, ¶ 12-13). A witness confirms that Roe's mannerisms that night show that she was able to make rational decisions and was able to consent to sex. (Dkt. 1, ¶ 14-16).

Over a year after their sexual interaction, on or about October 1, 2018, Doe was informed by the University that he had been accused of violating the University's Code of Conduct. (Dkt. 1, ¶ 17). The University conducted a biased and improper investigation that lasted from about October 1, 2018 to November 12, 2018. (Dkt. 1, ¶ 18-19).

The main investigator, Paul Krikau ("Krikau"), was biased. (Dkt. 1, ¶ 21). The investigators chose to interview some witnesses and arbitrarily declined to interview others, including many potential witnesses who could have exculpated

3

Doe and/or provided evidence of Roe's lack of credibility. (Dkt. 1, ¶ 22-23). Additionally, during his initial interview with Roe, before any other witnesses were interviewed, Krikau made the following statements: we have established very clearly sexual misconduct; at this time, this is clearly a policy violation; I would say we have a very clear case of harassment, victim intimidation, and stalking. (Dkt. 1, ¶ 25). These statements show that Krikau made up his mind before the investigation even began and as Doe alleges he was acting as an advocate for Roe rather than an impartial investigator from the very start of the process. (Dkt. 1, ¶ 26).

Doe's complaint alleges many facts regarding Roe's lack of credibility. (Dkt. 1, ¶ 27-36). The investigators chose not to investigate any of the allegations by Roe and accepted all of her allegations as true without investigating them further, which is further evidence of their bias. (Dkt. 1, ¶ 32). Per the University's Code of Conduct, investigators are not advocates, they are supposed to "commence thorough, reliable, and impartial investigation[s]." (Dkt. 1, ¶ 37).

During Doe's disciplinary proceeding, the University failed to follow its policies and procedures in multiple ways, including changing its policy in the middle of the investigation into Doe's alleged actions. (Dkt. 1, ¶ 42-43). When Doe was first accused of sexual misconduct, the University's policies provided for the allegations to adjudicate at a formal hearing. (Dkt. 1, ¶ 42). After the new policies went into effect, which occurred after the investigation into Doe took place, hearings were no longer provided for under the Code of Conduct. (Dkt. 1, ¶ 42-43). The new policy

4
Case 2:19-cv-00388-JPS   Filed 06/07/19   Page 4 of 15   Document 19

provided for an "investigator model" whereby investigators perform the investigation and also make the final decision regarding responsibility and sanctions." (Dkt. 1, ¶ 44).

Per University policy, the investigators do not just investigate the allegations, they also adjudicate the dispute and make the decision regarding the findings and sanction for Doe. (Dkt. 1, ¶ 40). Due to investigators acting as investigator, judge, jury, and executioner, any bias and impartiality is detrimental for the outcome. (Dkt. 1, ¶ 40).

On November 12, 2018, Doe was notified that the biased investigators found him responsible for the sexual misconduct and suspended him for two years. (Dkt. 1, ¶ 47-48). Doe appealed the decision. (Dkt. 1, ¶ 54). The University granted him his appeal and remanded the case back to the investigators. (Dkt. 1, ¶ 60-61). The new investigation began and ended on the same date – December 12, 2018. (Dkt. 1, ¶ 63). This is further evidence of bias and impartiality. *Id.* The second appeal upheld the decision to find Doe responsible and suspend him for two years. (Dkt. 1, ¶ 79). The investigation's findings have tarnished his reputation and put his career and ROTC aspirations at risk. Additionally, there remains a mark on his University student record and he currently cannot attend the University.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need contain

"only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests ...." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted). "[O]n a motion to dismiss we [the court] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Wildlife Defenders*, 504 U.S. 555, 561 (1992). Courts must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). When reviewed against these standards, Doe's complaint is plainly sufficient.

## LEGAL ARGUMENT

### I. Doe plausibly pled facts to satisfy his Title IX claim.

Title IX prevents colleges and universities that receive federal funding from discriminating on the basis of sex. 20 U.S.C. § 1681(a). The Supreme Court has held that Congress gave the statute broad reach by intending for the term "discrimination" to cover "a wide range of intentional unequal treatment" on the basis of sex. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005).

In Title IX cases, plaintiffs can proceed under four theories: (1) erroneous outcome; (2) selective enforcement; (3) deliberate indifference; and (4) archaic assumptions. *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994); *Doe v. Miami University*, 882 F.3d 579, 589 (6th Cir. 2018). Doe is proceeding under the erroneous outcome and selective enforcement theories in the alternative. *Yusuf*, 35 F.3d at 715 ("Plaintiffs may plead in the alternative that they are in both

6

categories."). To survive a motion to dismiss, Doe "must provide some allegations to allow the Court to infer a causal connection between his treatment and gender bias and raise the possibility of relief under Title IX above the speculative level." *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 792 (N.D. Ill. 2015).

1. <u>Doe was wrongly found to have committed an offense ("erroneous outcome").</u> To be successful on a claim for erroneous outcome, Doe must (1) allege facts sufficient to cast an articulable doubt on the accuracy of the outcome of the disciplinary proceeding; and (2) must also allege a particularized causal connection between the flawed outcome and gender bias. *Yusuf,* 35 F.3d at 715; *Doe v. Purdue Univ.*, 281 F.Supp.3d 754, 774 (N.D. Ind. 2017).

Defendant conceded that Doe has satisfied the first requirement of an erroneous outcome claim. Dkt. 12 at 6. Therefore, Doe will only address the second element. Once the student has pled facts that show articulable doubt, he then must plead facts showing a particularized causal connection between the flawed outcome and gender. *Miami Univ.*, 882 F.3d at 593. To withstand a motion to dismiss, a Title IX plaintiff need only plead "specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016).[2] In *Columbia University*, the Second Circuit found that an allegation that the university and its administrators were motivated by anti-male bias, which was adopted to refute criticisms that the university was turning a blind eye to charges of

---

[2] Courts have looked to case law interpreting Title VII when analyzing Title IX claims. *See Yusuf,* 35 F.3d at 715.

7

male sexual assault, was sufficient to survive a motion to dismiss. *Columbia Univ.*, 831 F.3d at 56. That Court held that the pleading standard set forward in *Iqbal* does not require that the inference of discriminatory intent be the *most* plausible explanation; it is sufficient if it is merely a plausible explanation. *Columbia Univ.*, 831 F.3d at 57. The same analysis applies here.

Defendants heavily rely on *Doe v. Purdue*[3] to argue that Doe does not meet the plausibility standard. Doe not only survives the pleading standard as set forward in *Columbia University*, but also satisfies the more stringent pleading standard as set forth in *Doe v. Purdue*. *Doe v. Purdue* requires that the facts alleged must suggest that gender bias actually caused the erroneous finding. *Doe v. Purdue*, 281 F. Supp. 3d at 774.

Doe alleges that the University and its agents were motivated by the Office of Civil Rights ("OCR") investigations into how schools handle allegations of sexual assault as well as media stories regarding the pervasive nature of sexual assault committed by male students. Dkt. 1, ¶ 88. Doe also pled that the University has a pattern and practice of treating males and females differently when it comes to sanctions for alleged sexual misconduct. Dkt. 1, ¶ 91. Additionally, evidence gathered during discovery will show that the University has not adjusted its procedures since the OCR 2017 and 2018 guidelines and that the University entered into a Resolution Agreement with the OCR less than two months before its investigation into Doe (this is pled in Doe's amended complaint). This is a matter of

---

[3] Currently on appeal to the United States Court of Appeals Seventh Circuit, case no. 17-3565.

8
Case 2:19-cv-00388-JPS Filed 06/07/19 Page 8 of 15 Document 19

proof, not an issue of pleading. The facts Doe alleged relating to the "OCR" are sufficient at the pleading stage. *Miami Univ.*, 882 F.3d at 593; *see also, Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 587 (E.D. Va. 2018).

2. <u>**The severity of the sanctions was a result of Doe's gender ("selective enforcement")**</u>. To be successful on a claim for selective enforcement, Doe must allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Yusuf,* 35 F.3d at 715. Such allegations "can be of the kind that are found in Title VII cases" such as "statements by members of the discipline tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender. *Id*; *see also, Miami Univ.*, 882 F.3d at 592. Some courts have held that to satisfy this element, Plaintiffs need to allege that a female was in circumstances sufficiently like his and was treated more favorably by the defendants. *Doe v. Purdue,* 281 F. Supp. 3d at 784. The similarly situated member of the opposite sex who was treated more favorably than the plaintiff due to his or her gender is often referred to as the "comparator." *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 412 (D.R.I. 2018).

Doe argues that a comparator is not necessary to satisfy a selective enforcement claim under *Yusuf. Yusuf,* 35 F.3d at 715. Should the Court decide that a comparator is required to satisfy selective enforcement, the comparator here is Jane Roe. Doe and Roe were both drinking on the night in question. She and Doe both engaged in sexual activity. Yet, Doe was punished and Roe was not. The only difference is their gender. *Doe v. Rollins* College, 352 F.Supp.3d 1205, 1211 (M.D. Fla.

9

2019) (denying motion to dismiss as to selective enforcement claim due to Jane Roe's conduct).

In addition to the evidence of the comparator, which Doe argues is not required under *Yusuf*, Doe also alleges statements made by university officials that show gender bias as well as a pattern and practice of gender bias by the University. Specifically, Doe alleges that during Krikau's initial interview with Roe, before any other witnesses were interviewed, he made the following statements: we have established very clearly sexual misconduct; at this time, this is clearly a policy violation; I would say we have a very clear case of harassment, victim intimidation, and stalking. (Dkt. 1, ¶ 25). These statements show that Krikau made up his mind before the investigation even began and that he was acting as an advocate for Roe rather than an investigator from the very start of the process. (Dkt. 1, ¶ 26). These comments when combined with the differential treatment of Doe and Roe and the allegations relating to OCR (Dkt. 1, ¶ 88), news media (Dkt. 1, ¶ 89), and the pattern and practice of unfair investigations (Dkt. 1, ¶ 91) show a clear bias against males at the University. Doe's Title IX claim should not be dismissed.

**3. Doe filed an amended complaint that cured any deficiencies.** As stated above, Doe properly filed his Amended Complaint (Dkt. 17) on May 31, 2019, the deadline provided for in the Joint Rule 26(f) Report (Dkt. 7, ¶ 4) and before any responsive pleading per Rule 15(a). Fed. R. Civ. P. Rule 15(a). The amended complaint added many allegations relating to Doe's Title IX claim in paragraphs nine through twenty-three relating to specific instances of the University changing

its policies to favor female students over male students in University proceedings involving allegations of sexual misconduct as well as national movements affecting the culture of the University. Dkt. 17, ¶ 9-23. Specifically, Doe alleged that an OCR investigation into the University resulted in the University changing its policies in the middle of Doe's investigation because of a Resolution Agreement the University made with OCR in August 2018. Dkt. 17, ¶ 57. Should the Court find that Doe did not allege enough specific facts relating to gender bias in his original complaint, his amended complaint definitively crosses the line from possible to plausible, satisfying the *Twombly/Iqbal* standard.

## II. Doe plausibly pled facts to satisfy his Breach of Contract Claim

Pursuant to Wisconsin law, whether an implied contract exists is a question of fact. *Theuerkauf v. Sutton*, 102 Wis. 2d 176, 183 (1981). The University does not dispute that the Code of Conduct created an implied contract. It merely argues that Doe did not properly plead any factual allegations relating to a breach of such a contract. To support this argument, the University only points to two allegations relating to the alleged breach. Dkt. 12 at 10. In addition to those allegations (as well as others), Doe also alleges that "[p]er the Code of Conduct, Investigators should 'commence a thorough, reliable and impartial investigation.'" Dkt. 1, ¶ 37. As shown by the above facts, Doe alleges that the University did not commence a thorough, reliable, or impartial investigation and he specifically alleges as such in the complaint. Dkt. 1, ¶ 38. These allegations create a plausible breach of contract by the University.

Relating to the allegations to which the University takes issue – 1) holding John Doe responsible for rules in effect after the alleged sexual misconduct (Dkt. 1, ¶ 46) and 2) denying John Doe the right to have Jane Roe's allegations adjudicated by a formal hearing (Dkt. 1, ¶¶ 42-43) – these allegations are governed by the "reasonable expectation" of a contract doctrine as provided for under Wisconsin law. *See Weimer v. Country Mut. Ins. Co.*, 216 Wis. 2d 705, 719-20 (1998); *Columbus Milk Producers' Coop. v. Dep't. of Agriculture*, 48 Wis. 2d 451, 463 (1970); *Mgmt. Comput. Servs. v. Hawkins, Ash, Baptie & Co.*, 206 Wis. 2d 158, 186 (1996). Therefore, it is a question of fact whether a reasonable college student would have the expectation of the rules in effect at the time of the alleged sexual misconduct as well as an entitlement to a hearing.

Additionally, once a contract is created (which the University does not dispute), it "implies a duty of good faith and fair dealing between the parties and a promise against arbitrary or unreasonable conduct." *Marquette Univ. v. Lapertosa*, 2000 Wisc. App. LEXIS 1197, at *13 (Wis. Ct. App., Oct. 17, 2000).[4] Doe alleges a breach of good faith and fair dealing in Count IV of his complaint. Dkt. 1, ¶¶ 111-116. The University can argue that it was not required to provide a hearing, but there remains a question of fact as to whether not providing a hearing breached its duty of good faith and fair dealing under the implied contract. Here, the Court must accept all allegations as true and decide if the facts alleged create a plausible

---

[4] Pursuant to Civil L.R. 7(j)(2), a copy of this decision has been filed as Exhibit 1 to this brief in opposition.

breach. Clearly Doe has satisfied his obligation. His breach of contract claim should not be dismissed.

## III. DECLARATORY RELIEF

The University is correct that in order for a court to grant declaratory relief, there must be an "actual controversy." *Int'l Harvester Co. v. Deere & Co.*, 623 F.3d 1207, 1210 (7th Cir. 1980). Here, there is clearly a continuing wrongful action.[5] Doe cannot currently attend the University due to the improper sanction Doe received from the University. Moreover, the finding of 'responsible' of sexual misconduct is currently on his student record resulting in obvious harm by Doe. Finally, his scholarship and admission in ROTC are in jeopardy. The wrongs by the University as alleged in his complaint and amended complaint are ongoing today and are still affecting Doe in his daily life. Declaratory relief and an injunction can remove the finding from his student record as well as allow him to return to the University should he choose. Doe also alleges a continuing violation of federal law[6] in his claims relating to Title IX. Doe's declaratory judgment and request for injunctive relief should not be dismissed.

## CONCLUSION

For the foregoing reasons, Doe's claim for Title IX, breach of contract, and declaratory judgment should not be dismissed.

---

[5] *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991).
[6] *Kress v. CCA of Tenn., LLC.*, 694 F.3d 890, 894 (7th Cir. 2012).

DATED: June 7, 2019                    Respectfully submitted,


                                       By: /s/Jesse R. Binnall
                                       Jesse R. Binnall, VSB No. 79292
                                       Lindsay R. McKasson, CSB No. 293144
                                       Harvey & Binnall, PLLC
                                       717 King Street – Suite 300
                                       Alexandria, VA 22314
                                       Telephone: (703) 888-1943
                                       Facsimile: (703) 888-1930
                                       Email: jbinnall@harveybinnall.com
                                              lmckasson@harveybinnall.com

                                       *Counsel for Plaintiff*

## Certificate of Service

I certify that on June 7, 2019, the forgoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to all counsel of record who are registered with CM/ECF. There are no *pro se* parties in this matter.

By: /s/Jesse R. Binnall
Jesse R. Binnall, VSB No. 79292
Harvey & Binnall, PLLC
717 King Street – Suite 300
Alexandria, VA 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com

*Counsel for Plaintiff*