IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
(Milwaukee Division)

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>MARIAN UNIVERSITY,<br><br>    Defendant. | Civil Action No. 2:19-cv-00388-JPS |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE OR TO FILE A REPLY BRIEF

The convoluted nature of Defendant Marian University's ("University") motion to strike or to file a reply brief shows that material facts are in dispute and are not ripe for summary judgment. This confusing motion is a curious strategy to try to convince the court that the facts in this case are so clear cut as to deserve summary judgment.

The University attempts to use the rules to game the system by seemingly objecting for the sake of objecting in an effort to win summary judgment.[1] Many, if not all, of the University's objections are ultimately baseless. Further, the University objects on issues that are not truly in dispute or are merely foundational (such as whether Doe and Roe met in ROTC). In doing so, it seems to ignore the

---

[1] "The reason for the rules is not that litigation is a game, like golf." *Poliquin v. Garden* Way, 989 F.2d 527, 531 (1st Cir. 1993)(Boudin, J.).

summary judgment evidentiary standard, requiring only an admissible vehicle for the evidence in the summary judgment record, not that each item be admissible on its own. *See Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The motion for summary judgment should be denied and these issues should be hashed-out at trial.

## BACKGROUND

The University filed a Proposed Findings of Fact (PFOF)[2] in support of its Motion for Summary Judgment that included one hundred and fifty proposed facts (Dkt. 40). Doe responded to each of those facts (Dkt. 45).

The University complains that Doe's response was a "behemoth" and was not concise (Dkt. 49 at 1-2). While the University's proposed facts were admittedly brief, the proposed facts contained complicated issues, which Doe responded to substantively and as concisely as possible. This is a fact-intensive case, and the facts are not nearly as simple as the University wishes them to be. Pursuant to Local Rule 56, Doe attempted to be "concise," while still being as thorough as necessary, under the circumstances. It is also worth noting that Doe's Proposed Additional Material Facts (Dkt. 44) was only seven pages in length, while the University's response was twenty-four pages (about four times the length). The University's proposed facts was about eighteen pages in length (Dkt. 40). Doe's

---

[2] For ease of the Court, Plaintiff will adopt Defendant's document title "Proposed Findings of Fact" (PFOF) for purposes of this brief; however, Plaintiff contends that this title is incorrect pursuant to Civil L. R. 56(b)(1)(C) and should instead read "Defendant's Proposed Material Facts."

response was seventy-one pages (also about four times the length) (Dkt. 45). Thus, Doe's response was proportionally the same length as the University's.

The University also claims that Doe cited inadmissible evidence or failed to cite any evidence at all. That is inaccurate as further detailed below.

## AGRUMENT

In this district, motions to strike are disfavored. L.R. 56(b)(9) ("Collateral motions, such as motions to strike are disfavored"). Nonetheless, the University chose to file a fifty-three page motion to strike (Dkt. 49). The motion to strike relies on a few principles that are repeated throughout the lengthy motion. Doe responds to each of those principles below.

### I. Doe Complied with Civil Local Rule 56(b)(2)(B)(i) and Federal Rule of Civil Procedure 56(e)

Every single objection by the University recites that Doe violated Civil Local Rule 56(b)(2)(B)(i) and Federal Rule of Civil Procedure 56(e). All but eight of those objections state that Doe violated these rules by not responding to the alleged fact at issue.[3] Civil Local Rule 56(b)(2)(B)(i) states that the opposing party's materials in opposition must contain "a concise response to the moving party's statement of facts" which must contain "a reproduction of each numbered paragraph…followed by a response to each paragraph, including in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials relied upon." Civil L.R. 56(b)(2)(B)(i). While the University takes issue

---

[3] The University argues that Doe violated these rules in responses to PFOF 35, 37, 38, 43, 60, 90, 95, 104 on other grounds.

with the length of Doe's response (*i.e.* not "concise" per 56(b)(2)(B)), it is not clear how Doe failed to comply with the remaining part of the rule. Where Doe disagreed with the alleged fact, he did so by specifically referencing the supporting material as required by the rule.

> Federal Rule of Civil Procedure 56(e) states:
>
> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion (3) grant summary judgment if the motion and supporting material – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order.

It is unclear how Doe "violated" this provision as it merely recites the Court's authority when a party fails to properly support an assertion or address another party's assertion. Presumably, the University means to argue that Doe failed to properly address the University's assertions of fact. Ironically, the University takes issue with Doe's response not being concise (i.e. providing too many facts to support Doe's assertion that the facts are disputed) while at the same time arguing that Doe failed to sufficiently respond to the facts alleged.

The University wishes that the issues of this case are simple and provides facts that ignore context or background. Doe's facts are responsive because they give context to facts alleged by the University. While Doe might agree that a certain sentence presented by the University is accurate, it is also misleading and confusing standing on its own. Therefore, pursuant to the rules, Doe provides the appropriate context to show the true nature of the factual dispute. "Additional information

provided by Plaintiffs" in their material facts "may be used to put the facts in context." *Frederick v. Abbott Labs.*, No. 03 C 5038, 2005 U.S. Dist. LEXIS 41543, *27 (N.D. Ill., Mar. 16, 2005).[4]

For instance, in PFOF 13, Defendant purports that "Dr. Krikau told Plaintiff that Plaintiff would be able to review all of the evidence collected in the case. [Dkt. 33, 7:25-8:2]." In response, Plaintiff states "Undisputed that Doe testified that Krikau told him this. Disputed as to whether Doe was able to review *all* evidence collected in the case. Doe was not allowed to review the transcript of his third interview (on November 5, 2018) and was thus denied the opportunity to challenge or question the transcript from that third interview. [Ex. C (Dx 3) at DEF000007]. This was the subject of Doe's first appeal and resulted in the appeal being granted. [Ex. D (Dx 7)]." Doe's use of context to reveal the cumbersome nature of the disputed fact, and potential evidence of further gender discrimination, is appropriate and proper. Thus, Defendant's objection is baseless.

## II.    Doe Does Not Rely on Himself as a Witness for all Facts

The University repeatedly argues that Doe attempts to change his deposition testimony. This mischaracterizes Doe's responses. In his responses, Doe acknowledges what he said during his deposition. Doe, however, will not be a witness for each fact alleged and also does not know the legal theories behind all of the facts his attorneys collected through discovery. Indeed, Doe is not primarily

---

[4] Pursuant to Civil L.R. 7(j)(2), a copy of this decision has been filed as Exhibit 1 to this brief.

relying on his own testimony to show evidence of gender discrimination; nor is he required to do so. The University has not cited any case law that states he needs to be the author or have knowledge of all evidence. The University repeatedly attempted to use Doe's deposition testimony to support legal conclusions for which Doe was not qualified to conclude or to use Doe's "yes" answer to a question as fact, even when that testimony was controverted by the record. Thus, as stated above, Doe provided context to show the disputed facts at issue.

For instance, in the example used by the University (Dkt. 49 at 2-3), although Doe answered "yes" to whether the University explained the process by which they would be following for the investigation during his initial interview, upon reviewing the transcript of Doe's initial intake interview, it is disputed whether the investigation process was actually followed and clearly explained (Dkt. 45 at 9). Therefore, Doe cited the transcript to show what the investigators actually explained. The transcript is not hearsay because it is not offered for the truth of the matter asserted (Fed. R. Evid. 801(c)); moreover, it contains party admissions (Fed. R. Evid. 801(d)(2)), present sense impressions (Fed. R. Evid. 803(1)), business record (Fed. R. Evid. 803(6)), recorded recollection (Fed. R. Evid. 803(5)) and contains prior consistent statements (Fed. R. Evid. 801(d)(1)). The better evidence is not what Doe remembered or described in his deposition, but the actual transcript of what the University stated during the interview at issue. Federal Rule of Evidence 1002 contains the Best Evidence Rule, which holds an original copy of a document as superior evidence. Fed. R. Evid. 1002 ("An original writing, recording, or

photograph is required in order to prove its content"). In a similar vein as the Best Evidence Rule, the best source of content for the way the investigators described the investigation process to Doe is not what Doe said about it during his deposition; rather, it is the spoken words of the investigators themselves, as depicted in the transcript of the interview.

## III.   Doe Did Not Provide "Sham Responses"

In addition to arguing that Doe did not comply with Local Rule 56(b)(2)(B)(i) and Federal Rule of Civil Procedure 56(e) for every alleged fact at issue, the University also repeatedly argues that Doe's so-called "sham response" should be stricken due to its arguments in paragraphs four and five in its' motion (Dkt. 49).[5] The University, however, fails to address the use of evidence outside of Doe's testimony. It's arguments relating to sham affidavits and *Upjohn* are red herrings because the University does not want to face the facts presented outside of Doe's deposition testimony.

The University improperly identifies clarifications, and at times, Doe's own testimony, as sham affidavits. For example, Defendant objects to Plaintiff's response to PFOF 138 on sham affidavit grounds; however, the citations used to support 138 refer to Plaintiff's own testimony. Plaintiff is in no way impermissibly changing Doe's testimony. It appears that the University was "cherry-picking" or

---

[5] The University takes issue with the following responses on these grounds: 9,11, 12, 13, 14, 18, 19, 21, 34, 35, 39, 43, 44, 45, 54, 55, 61, 62, 63, 65, 70, 71, 72, 77, 82, 91, 101, 109, 110, 114, 115, 119, 123, 126, 127, 128, 130, 138, 144, 145.

evaluating facts with a selective lens to read Plaintiff's response in a way that supported its argument instead of reading it objectively. This argument and the objections that follow are baseless.

The concern with sham affidavits is that "plaintiff and counsel will simply compose an affidavit to rectify the prior sworn testimony, regardless of the veracity of that affidavit." *Owsiak v. Kimco Corp.*, 1997 U.S. Dist. LEXIS 18271, *11 (N.D. Ill., Nov. 12, 1997).[6] In the case at hand, the University fails to decipher the differences between clarifying answers and overtly changing them. *Id.* at *13. Plaintiff's counsel is permitted to elaborate upon, explain or clarify prior testimony elicited by opposing counsel at deposition. *Cook v. O'Neill*, 2014 U.S. Dist. LEXIS 869, *13-14 (E.D. Wis., Jan. 6, 2014).[7] Any minute inconsistencies that result from newly discovered evidence are not sham affidavits. *Id.* "Such an affidavit or declaration may also be considered where evidence is offered to show that the prior statement "was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy." *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 756 (7th Cir. 1998) (quoting *Russell v. Acme-Evans Co.,* 51 F.3d 64. 68 (7th Cir. 1995)).

---

[6] Pursuant to Civil L.R. 7(j)(2), a copy of this decision has been filed as Exhibit 1 to this brief.

[7] Pursuant to Civil L.R. 7(j)(2), a copy of this decision has been filed as Exhibit 1 to this brief.

Moreover, Doe is not an attorney and is not responsible for understanding the legal theories behind his case. At the time of Doe's deposition, he may or may not have been aware of the multitude of facts his counsel had gathered to support his claims. What Doe said in his deposition reflects his limited knowledge and may not be an accurate reflection of the truth that the facts, when viewed as a unit. Plaintiff's use of Doe's testimony and transcript to clarify and expand Doe's deposition, in light of the many facts of the case, does not constitute use of a sham affidavit and is compliant with the requirements of the Seventh Circuit.

## IV.   Doe Does Not Employ "Newly Found" Evidence

The University repeatedly contends that Plaintiff "should not be permitted to rely on his "newly found" evidence" which was not disclosed at his deposition to create a disputed material fact.[8] It is unclear what testimony the University is referring to here, but in the example in paragraph six (Dkt. 49 at 13(j) regarding PFOF 32, the information was not "newly found." Indeed, all of these documents were provided by the University in discovery.

Defendant objects to Plaintiff's response to Marian's PFOF 78, 108, 133, 137, 138 and 139 on these same grounds; however, the "newly found" evidence Defendant refers to is not new evidence. These responses are comprised of complicated facts, and the truth is often revealed when the facts are viewed as a whole. Solely relying on Plaintiff's testimony about the evidence he has access to in

---

[8] The University objects on these grounds relating to the following responses: 32, 78, 108, 133, 137, 138, 139.

and during his deposition is an inaccurate way to discover the truth of the assertion. Doe's deposition testimony does not alone encompass the multitude of facts in this case. As is made clear in *Doe v. Purdue,* the Court should look at the totality of circumstances to decide if the University discriminated against Doe "on the basis of sex." *Doe v. Purdue*, 928 F.3d 652, 669 (7th Cir. 2019).

In *Doe v. Purdue*, the plaintiff casts his claim against the backdrop of the 2011 Dear Colleague Letter from the Office of Civil Rights ("OCR"). *Id.* at 668. That Court acknowledged, however, that "the letter, standing alone, is obviously not enough" and it looked to other many factors that may support sex discrimination such as the Title IX coordinator choosing to credit Jane's account without hearing directly from her, refusing to hear from the plaintiff's witnesses, including his male roommate, and posting on its Title IX Office's Facebook page an article from *The Washington Post* titled "Alcohol isn't the cause of campus sexual assault. Men are" the same month in which the plaintiff was disciplined. *Id.* at 669-70. That Court looked to multiple pieces of evidence outside of Doe's testimony to decide if Doe pled that the University plausibly discriminated against him on the basis of sex. Here, the Court must look to all of the evidence, not just Doe's testimony.

Further, Defendant argues that *Upjohn* prevents Doe from relying on the attorney-client privilege relating to legal information learned from his attorneys. It does not.[9] *Upjohn* holds that a party "may not refuse to disclose any relevant fact

---

[9] The University has not moved to compel any deposition testimony that it asserts is inadequate.

within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney." *Upjohn Co. v. U.S.*, 449 U.S. 383, 395-96. The information Doe did not disclose in his deposition was not information he communicated with his attorney and now seeks to cover by privilege; rather, it was information Doe learned solely from his attorney regarding the legal theory of the case. This information is overtly covered in the attorney-client communication privilege. *See United States v. Evans*, 113 F.3d 1457 (7th Cir. 1997). Attorney-client privilege is "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Id.* at 1461.

The content of the communications between Doe and counsel in part consisted of legal theories. Doe refused to answer some questions posed in his deposition based on privilege. The only reason he knew some information asked of him was because his lawyers told him; this information was disclosed to Defendant in discovery or based on information from the University to Doe. That a 22-year-old student did not grasp these difficult legal issues at the time of his deposition, could make him a poor witness at trial on these topics, but his testimony is far from the only facts at issue. Indeed, he is not likely to be the key witness relied upon to present this evidence at trial. Additionally, Doe provided facts in response to the

motion for summary judgment that were known to the University and which support his case. Thus, *Upjohn* is inapposite.

## V.    All Facts Offered are Supported by the Record Provided to the Court

The University also repeatedly contends that there is not a citation to the record.[10] All sentences contained in the response are covered by the citations within. At times, Plaintiff was trying to respond concisely instead of repeating himself. There are eight depositions and forty-four exhibits on the record. Every fact Plaintiff puts forward is supported by the record, and the record is extensive at that.

Defendant objects to Plaintiff's response to PFOF 91 on lack of citation grounds. Defendant proposes the fact that "Plaintiff acknowledged that, had he done a search online prior to the appeal panel hearing his case, he could have discovered the Tweet that he now asserts demonstrates Fitzpatrick's bias. [Dkt. 33, 36:9-18]." Plaintiff's response, in part, states "Disputed also as to whether it was Doe's duty or the University's duty to go through extensive discovery as it pertains to appellate panelists." While Plaintiff did not provide a record citation to this issue, no citation to the record was needed. The issue of duty is a question of law, not of fact. Thus, Plaintiff's response is proper, and no citation to the record was required.

Defendant further objects to Plaintiff's responses to PFOF 95, 103, and 115 on similar grounds. Relating to PFOF 95, Defendant purports that "Plaintiff's

---

[10] The University objects on these grounds relating to the following responses: 9, 34, 54, 60, 68, 71, 72, 77, 78, 82, 90, 91, 95, 100, 103, 108, 109, 113, 114, 115, 116, 119, 128, 130, 133, 136, 138, 141, 142, 143, 144, 148, 149, 145 (*sic*.; supposed to be 150).

statements from his November 5, 2018 interview were considered by the investigators and were included in the investigators' November 12, 2018, findings letter. [Dkt. 33, 31:2-9.]" Plaintiff's response states that although Doe stated this in his deposition, "the University fails to cite to Krikau or Harmsen's deposition. Doe did not have the personal knowledge necessary to conclude the investigators considered such information in the findings letter." Defendant's objections to this response are baseless.

Further, Defendant's objection relating to PFOF 103 is wholly inaccurate, as every part of the response that relied on evidence was cited. As to the remaining parts of the response, Doe had no personal knowledge (PFOF 103 states "The appeal panel reviewed each and every single issue that Plaintiff raised and addressed Plaintiff's arguments, including those arguments that fell outside the scope of the appeal panel's scope of review. [Dkt. 33, 36:24-37:3.]" Doe does not and could not know what the appeal panel did or did not do). Thus, there is no citation to the record as Doe was simply arguing that he did not have personal knowledge of the facts at issue.

Finally, Defendant's objection relating to PFOF 115 (regarding information wholly within the investigators' knowledge) for lack of citation is unfounded on the same grounds. Instead of citing to the record, Plaintiff refers to the absence of the record because he has no personal knowledge of the facts at issue and these questions were never posed to the investigators or other relevant parties in the case.

13

## VI. Doe Did Not "Violate" Rule 106

In another curious argument by the University, it argues that Doe "violates" Federal Rule of Evidence 106 (sometimes referred to as "the rule of completeness[11]").[12] It is wrong for two reasons – 1) one cannot violate Rule 106; and 2) all transcripts, depositions, and exhibits are provided in full. Rule 106 states "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at any time, of any other part – or any other writing or recorded statement – that in fairness ought to be considered at the same time. Fed. R. Evid. 106. Thus, the remedy for Rule 106 is for the adverse party to request a part of the record that they believe needs to be included for a full picture. *Sweiss*, 814 F.2d at 1212 ("to lay a sufficient foundation at trial for a rule of completeness claim, the offeror need only specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted."). Here, however, not only did the University fail to point to any portions it would like to be included, but Doe and the University indeed provided the entire record for the Court (in the form of full depositions, transcripts, etc.). The University inaccurately argues that Doe "cherry-picked" quotations. In reality, Doe pointed to the relevant portions that he would like the Court to consider and provided all documents in full.

---

[11] *United States v. Sweiss*, 814 F.2d 1208, 1211 (7th Cir. 1987) ("Federal Rule of Evidence 106 codifies the common law rule of completeness").

[12] The University objects on these grounds relating to the following responses: 35, 37, 38, 43, 103, 110, 116, 143, 145.

The University had every opportunity to do the same in its papers. This is yet another failed argument by the University.

For instance, in response to Defendant's Proposed Material Fact 145 which states "Plaintiff has no evidence that Dee Harmsen was biased in any way during the investigation regarding the complaint against Plaintiff." [Dkt. 33, 109:16-21], Doe responds "Disputed. Harmsen testified that she was not impartial during the investigation yet felt no need to recuse herself. [Dkt. 31, 61:1-5]." Doe adds a footnote to this response, stating "Later in her deposition, after a break, Harmsen changes her testimony and testified that neither she nor Krikau were showing bias. [Dkt. 31, 106:1-17, 108:5-20]. When asked whether she talked with counsel about any part of her testimony on break, she answers yes. [Dkt. 31, 112:19-21]." Not only did Doe cite to the entire testimony, but additionally and further, he highlighted areas of discrepancy within the testimony to help guide the Court in its considerations.

Finally, the University argues that failing to conform with Rule 106 simultaneously violates Federal Rule of Civil Procedure 56(c)(2) due to improper form of evidence. As explained above, the University's misconstrued understanding of an alleged Rule 106 "violation" is incorrect, and thus Doe accurately complied with both Federal Rule of Evidence 106 and Federal Rule of Civil Procedure 56(c)(2).

## VII. Doe did not Respond with "Unfettered Speculation and Hypothesis"

### a. Response to PFOF 36

Defendant objects to Plaintiff's response to PFOF 36 in part because "Plaintiff has provided no evidence to rebut Dr. Krikau's testimony, other than unfettered speculation and hypothesis." Looking at the corresponding document in Exhibit H, characterizing Krikau's own words as "unfettered speculation" is largely misleading. Plaintiff cites to the initial intake interview with Krikau, Harmsen, and Jane Roe to show the language directly used by Krikau. What was said in the intake interview, versus the way Krikau later characterized this statement in his deposition afterwards, demonstrates a disputed material fact. It is ultimately the responsibility of the jury to decide which story to believe. This case is not ripe for summary judgment.

### b. Response to PFOF 68

Defendant objects to Plaintiff's response to Defendant's PFOF 68 because it lacks citations, and also because it is unfettered speculation and hypothesis. The first portion of this citation is a typo; the citation should point to page 178, not 17 (thus, the citation should read 178:16-22). Plaintiff will file an errata to further clarify this point.

Defendant's objection to Plaintiff's second citation is baseless. The citation points to the language of Krikau's deposition stating that Doe's "first reaction the next morning" (after the sexual encounter with Roe) was to find out what Defendant recalled from the night before and is properly cited. This response to Defendant's

proposed fact is grounded in the implicit bias of the investigation team. While Krikau *contends* that the deciding factor in the case was Doe's statement to Roe the morning after their sexual encounter, Krikau's self-serving testimony is a material fact in dispute.

First, while Krikau testified in his deposition that Doe's "first reaction the next morning" was to ask this question, he is contradicted by Doe's testimony (Dkts. 43-11 ("Exs. K") and 43-44 ("Ex. RR"), Specifically, Doe contends he "ended up asking" Roe "what do you remember from last night?" *after* she stated she had memory problems." Dkt. 43-44.

Second, Krikau's assertion that "Ultimately, Plaintiff's inability to credibly explain to the investigators why *the first thing* he asked the complainant the next morning was "what do you remember" was the deciding factor of Plaintiff's case." [Dkt. 30, 178:23-179:1] demonstrates Krikau's belief in Roe's testimony over Doe's testimony—or at minimum, a failure to consider the alleged context of the statement from Doe. Plaintiff disputes this fact—the deciding factor in Plaintiff's case was not what was said the next day, but rather, what the investigators believed about Doe and his gender before their first encounter with him. Finally, the question of whether Krikau's purported reason was legitimate or pretextual is a question to be addressed at trial.

## VIII.  No Exhibits are Barred by Hearsay Rules

Defendant's hearsay objections are almost all of curious legal bases. Especially when considering that hearsay is almost always going to be based on a

number of factual bases. Thus, by objecting on hearsay, the University has made many more issues of fact for the Court to consider, thereby underscoring that this case is not ripe for summary judgment. The University's reply shows just how many issues are in dispute.

Below is a chart for the hearsay objections, listing the exhibits in alphabetical order and including why the exhibit is admissible.

| Plaintiff's Response to Hearsay Objections | | | |
|---|---|---|---|
| Exhibit at Issue | Description of Exhibit | Plaintiff's Response to Defendant's Disputed Material Facts ("PRDMF") Numbers where Exhibit is at issue | Evidentiary Rule |
| A | 2018 Code of Conduct | 48, 54 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2) |
| B | Doe's 10/2/2018 Transcript | 6, 61, 141 | Prior consistent statement (Fed. R. Evid. 801(d)(1)); business record (Fed. R. Evid. 803(6)); not offered for the truth of the matter asserted (Fed. R. Evid. 801(c)); party admissions (Fed. R. Evid. 801(d)(2)); present sense impressions (Fed. |

| | | | R. Evid. 803(1)); and recorded recollection (Fed. R. Evid. 803(5)) |
|---|---|---|---|
| C | Doe's First Appeal | 9 | Not offered for the truth (Fed. R. Evid. 801(c)); business record (Fed. R. Evid. 803(6)); Prior consistent statement (Fed. R. Evid. 801(d)(1)) |
| D | University's First Appeal Decision | 13, 110, 116, 128, 144 | Party admission (Fed. R. Evid. 801(d)(2)); business record (Fed. R. Evid. 803(6)); not offered for the truth (Fed. R. Evid. 801(c)) |
| E | Rebuttals and Questions Posed by Doe | 14, 48, 49, 54, 61, 62, 77 | Not offered for the truth (Fed. R. Evid. 801(c)) |
| G | University's Second Appeal Decision | 104 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); not offered for the truth (Fed. R. Evid. 801(c)) |
| H | Roe's 10/1/18 Interview Transcript | 36, 48, 54, 56, 71, 78 | Not offered for the truth (Fed. R. Evid. 801(c)) |
| I | TJ (Student A) 10/15/18 Interview Transcript | 14, 48, 50, 54, 61, 141 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)) as to |

| | | | portions of transcript quoting University employees |
|---|---|---|---|
| J – ask JRB | Roe Witness Email | 48, 54, 56, 78 | Not offered for the truth (Fed. R. Evid. 801(c)); [See Dkt.32, 86:1-4] |
| K | Doe 11/5/18 Interview Transcript | 50, 63, 65, 66, 68, 69 | Prior consistent statement (Fed. R. Evid. 801(d)(1)); business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2) |
| L | Doe's Second Appeal | 56, 78, 133 | Not offered for the truth (Fed. R. Evid. 801(c)) |
| M | University's Findings Report | 48, 54, 55, 56, 57, 63, 65, 68, 78 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); not offered for the truth (Fed. R. Evid. 801(c)) |
| N | Roe's 10/11/2018 Transcript | 6, 14, 48, 54, 61, 78 | Not offered for the truth (Fed. R. Evid. 801(c)); business record (Fed. R. Evid. 803(6)); [See Dkt.32, 86:1-4] |
| O | Roe 11/1/18 Interview Transcript | 14, 48, 54, 61, 71, 78 | Not offered for the truth (Fed. R. Evid. 801(c)) |

| | | | |
|---|---|---|---|
| Q | University's Second Findings Letter | 110, 113, 116, 128, 144 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); not offered for the truth (Fed. R. Evid. 801(c)) |
| R | OCR 3/28/2019 Letter to University | 135 | Business record (Fed. R. Evid. 803(6)); public record (Fed. R. Evid. 803(8)) |
| S | University and OCR Resolution Agreement | 44, 136, 138, 142 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); public record (Fed. R. Evid. 803(8)); not offered for the truth (Fed. R. Evid. 801(c)) |
| U | University Email to Students | 138, 142 | Party admission (Fed. R. Evid. 801(d)(2)) |
| W | Doe's 10/11/2018 Transcript | 6, 50 | Prior consistent statement (Fed. R. Evid. 801(d)(1)); business record (Fed. R. Evid. 803(6)) |
| X | Witness 10/15/18 Interview Transcript | 14, 48, 54, 61 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted |

| | | | |
|---|---|---|---|
| | | | activity (Fed. R. Evid. 803(7)) |
| Y | Witness 10/15/18 Interview Transcript | 14, 48, 54, 61 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted activity (Fed. R. Evid. 803(7)) |
| Z | Witness 10/17/18 Interview Transcript | 14, 48, 54, 61 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted activity (Fed. R. Evid. 803(7)) |
| AA | Witness 9/18/18 Interview Transcript | 14, 48, 54, 61, 78 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted activity (Fed. R. Evid. 803(7)) |
| BB | Witness 10/18/18 Interview Transcript | 14, 48, 54, 61 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted |

| | | | activity (Fed. R. Evid. 803(7)) |
|---|---|---|---|
| CC | TJ (Student A) 10/31/18 Interview Transcript | 14, 48, 54, 61 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted activity (Fed. R. Evid. 803(7)) |
| DD | Witness 10/19/18 Interview Transcript | 14, 48, 54, 61 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); absence of a regularly conducted activity (Fed. R. Evid. 803(7)) |
| GG | Doe's Response to 11/5/18 Interview | 65 | Prior consistent statement (Fed. R. Evid. 801(d)(1)) |
| HH | OCR Complaint, OCR Letters to University, and OCR and University Resolution Agreement | 135, 138 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)); public record (Fed. R. Evid. 803(8) |
| II | Title IX Legal Case Update Training | 138, 142 | Not offered for the truth (Fed. R. Evid. 801(c)) |
| JJ | Updates in Compliance and Hot Topics Training – | 138, 142 | Not offered for the truth (Fed. R. Evid. 801(c)) |
| KK | Witness statement | 48, 54 | Summary of admissible |

| | | | testimony expected to be given at trial by the specific witness |
|---|---|---|---|
| LL | Witness statement | 48, 54 | Summary of admissible testimony expected to be given at trial by the specific witness |
| MM | Excerpt from University's Code of Conduct | 141 | Business record (Fed. R. Evid. 803(6)); party admission (Fed. R. Evid. 801(d)(2)) |
| Candee's Declaration[13] | Article entitled "Giving Survivors Power Over Their Story, Student Opens 'What Were You Wearing' Exhibit" found at Dkt 39-1 | 138, 139, 142 | Public record (Fed. R. Evid. 803(8)); Not offered for the truth (Fed. R. Evid. 801(c)); adoptive admission 801(d)(2)(B) |

DATED: December 13, 2019   Respectfully submitted,

<div style="margin-left:40%">

By: /s/ Jesse R. Binnall
Harvey & Binnall, PLLC
Jesse R. Binnall, VSB No. 79292
Lindsay R. McKasson, CSB No. 293144
717 King Street, Suite 300
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
  lmcasson@harveybinnall.*com*
*Counsel for Plaintiff, John Doe*

</div>

---

[13] Incredibly, Defendant objects to its own evidence that it provided to the Court as inadmissible hearsay.

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2019, I filed the foregoing using the

Clerk's CM/ECF system, which will provide notice to all counsel of record.

By: /s/ Jesse R. Binnall
Harvey & Binnall, PLLC
Jesse R. Binnall, VSB No. 79292
Lindsay R. McKasson, CSB No. 293144
717 King Street, Suite 300
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
        lmcasson@harveybinnall.com

*Counsel for Plaintiff, John Doe*